THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

THE ESTATE OF ESPERANT
GLORIIEUX KADIAYIZILA, by and
through his natural parents and heirs,
JEREMIE KADIAYIZILA and ANETTE
NNUZI LUPINI;
    Plaintiffs;                         CIVIL ACTION NO. 4:25-cv-00186-O

v.                                     JURY DEMANDED

HURST- EULESS- BEDFORD
INDEPENDENT SCHOOL DISTRICT;
    Defendant.

PLAINTIFFS RESPONSE TO DEFENDANT'S
PLEA TO THE JURISDICTION AND RULE 12(b)(6) MOTION TO DISMISS

Mr. Andrew G. Counts, Esq,
Texas Bar No. 24036408
Andrew@OHareLawFirm.com [Email]
**The Law Offices of Tim O'Hare**
1038 S. Elm Street
Carrollton, Texas 75006
(972) 960-0000 [Telephone]
(972) 960-1330 [Facsimile]

Martin J. Cirkiel, Esq.
Texas Bar No.: 00783829
Fed. ID No.: 21488
marty@cirkielaw.com [Email]
Cirkiel Law Group, P.C.
1005 West 41st, Suite 201
Austin, Texas 78756
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
REPRESENTATIVES FOR PLAINTIFFS

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.      **<u>BRIEF INTRODUCTION TO THE CASE</u>** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     FACTUAL RESUME . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    THE PLEA AND MOTION SHOULD BE DENIED BECAUSE THE DISTRICT SPOILED

        THE EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

IV.     THE PLEA TO THE JURISDICTION SHOULD BE DENIED . . . . . . . . . . . . . . . . . . 7

V.      STANDARD OF REVIEW FOR MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . 9

VI.     ARGUMENTS AND AUTHORITIES - THE CONSTITUTIONAL CLAIMS ARE

        PLAUSIBLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VII.    ARGUMENTS AND AUTHORITIES- THE DISCRIMINATION BASED UPON

        DISABILITY CLAIMS ARE PLAUSIBLE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION AND PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

# TABLE OF AUTHORITIES

**SUPREME COURT**

Bell Atlantis v. Twombly, 550 U.S. 544, 570 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Canton vs Harris, 489 U.S. 378 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

City of Amarillo v. Martin, 971 S.W.2d 426, 431, 41 Tex. Sup. Ct. J. 870 (Tex. 1998) . . . . . . . . 8

Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Davis v. Monroe County Board of Education 526 U.S. 629 (1999). . . . . . . . . . . . . . . . . . . . 22, 26

DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989) . . . . . . . 14

Franklin v. Gwinnett County Pub. Schools, 503 U.S. 60, 75 (1992) . . . . . . . . . . . . . . . . . . . . . 11

Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274 (1998) . . . . . . . . . . . . . . . . . . . . . . . . 21, 26

Goss v. Lopez, 419 U.S. 565 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 179 (2005). . . . . . . . . . . . . . . . . . . . . . . . 10

Kassen v. Hatley, 887 S.W.2d 4, 8, 38 Tex. Sup. Ct. J. 73 (Tex. 1994). . . . . . . . . . . . . . . . . . . 10

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

North Haven Bd. of Educ. v. Bell, 456 U.S. 512, 521 (1982); *quoting* United States v. Price, 383 U.S. 787, 801 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Roger Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000) . . . . . . . . . . . . . . 10

St. Mary's Honor Center v. Hicks, 509 U.S. 502, 524; 125 L. Ed. 2d 407; 113 S. Ct. 2742 (1993).10

Tchereepnin v. Knight, 389 U.S. 332, 336 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Washington v. Glucksberg, 521 U.S. 702, 721 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**COURTS OF APPEALS**

Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Bennett-Nelson v.Louisiana Bd. of Regents, 431 F.3d 448, 454 (5th Cir. 2005). . . . . . . . . . . . 28

Brennan v. Stewart, 834 F.2d 1248, 1257 (5th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Burge v. St. Tammany Par., 336 F.3d 363, 373 (5th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . 20

C.C. v. Hurst-Euless-Bedford Indep. Sch. Dist., 641 Fed. Appx. 423, 426 . . . . . . . . . . . . . . . . . .

Carmichael v. Galbraith, 574 Fed. App'x 286, 289-290 (5th Cir. 2014) . . . . . . . . . . . . . . . . . . 26

Castro v. McCord, 259 F. App'x 664, 665 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Chisolm v. McManimon, 275 F.3d 315, 327 (3d Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

City of Pasadena, 669 F.3d 225, 233 (5th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Collins v. Morgan Stanley Dean Whitter, 224 F3d 496, 498-499 (5th Cir. 2000) . . . . . . . . . . . 11

D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist., 629 F.3d 450, 453 (5th Cir. 2010) . . . . . . . . .

Delano-Pyle v. Victoria County, 302 F. 3rd 567, 574-7 (5th Cir. 2002) . . . . . . . . . . . . . . . . . 22, 27

Doe v. Sch. Bd. of Broward Cty., 604 F.3d 1248, 1256 (11th Cir. 2010) . . . . . . . . . . . . . . . . . 27

Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 857 (5th Cir. 2012).13

Duffy v. Riveland, 98 F.3d 447, 454-56 (9th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Estate of Lance v. Lewisville Indep. School District, 743 F.3d 982, 992 (5th Cir. 2014) . . . 22, 25

Eugene v. Alief Indep. Sch. Dist., 65 F.3d 1299, 1304 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . 18

Fisher v. Moore, 73 F.4th 367, 372 (5th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

General Star Indem. Co. v. Vesta Fire Ins. Corp., 173 F.3d 946, 951 (5th Cir. 1999) . . . . . . . . . .

Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002)..11

Groden v. City of Dallas, 826 F.3d 280, 285 (5th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Harrison v. Klein Indep. Sch. Dist., 856 Fed. Appx. 480, 484 (5th Cir. 2021) . . . . . . . . . . . . . . .

Hernandez v. Tex. Dep't of Protective & Regulatory Servs., 380 F. 3d 872, 881 (5th Cir. 2004)...24
Jett v. Dallas Ind. Sch. Dist., 7 F.3d 1241, 1245–47 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . 12

Kelley v. City of Wake Vill., 264 Fed. App'x 437, 443 (5th Cir. 2008)

L&A Contracting v. Southern Concrete Services, 17 F.3d 106, 113 (5th Cir. 1994) . . . . . . . . . . 20

Leffall v. Dallas Independent School District, 28 F.3d 521, 530 (5th Cir. 1994) . . . . . . . . . . . . . .

Littell v. Houston Indep. Sch. Dist., 894 F.3d 616 (5th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . 20

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Lowrey v. Texas A&M University System, 117 F.3d 242, 247 (5th Cir. 1997). . . . . . . . . . . . . . 10

Moore v. Willis Independent School District, 233 F.3d 871 (5th Cir. 2000)  . . . . . . . . . . . . . 13, 15

Murrell v. Sch. Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1248-49 (10th Cir. 1999) . . . . . . .   26

Neely v. PSEG Texas, Ltd. Partnership, 735 F3d 242, 247 (5th Cir. 2013). . . . . . . . . . . . . . . . 28

Pickett v. Texas Tech Univ. Health Sciences Ctr., 2022 U.S. App. LEXIS 16564 at *30-31 (5th Cir., June 15, 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Randolph v. Rodgers, 170 F.3d 850, 859 (8th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 248 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . 18

Rizzo v. Children's World Learning Ctrs., Inc., 173 F.3d 254, 261 (5th Cir. 1999)  . . . . . . . . . 27

Rodriguez v. Muzyka, 543 Fed. Appx. 363 (5th Cir. 2013)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Sanders-Burns v. City of Plano, 594 F.3d 366, 381 (5th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . 20

Smith v. Harris Cnty., 956 F.3d 311, 317- 318 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Synder v. Trepagnier, 142 F.3d 791, 795 (5th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Swindle v. Livingston Parish Sch. Bd., 655 F.3d 386 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . 12

Watts v. Northside Indep. Sch. Dist., 37 F.4th 1094, 1096 (5th Cir. 2022) . . . . . . . . . . . . . . . . 13

**DISTRICT COURTS**

Acosta v. Amarillo Indep. School District, 2025 U.S. Dist. LEXIS 80866 (N.D. TX- Amarillo Div., April 29, 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Ayon v. Austin Indep. Sch. Dist., 2024 U.S. Dist LEXIS 19910, 2024 WL 1572408, at *16 (W.D. Tex. Feb. 5, 2024)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Boggs v. Krum Independent School District, 376 F. Supp. 3d 714 (E.D. TX- Sherman Division, March 21, 2019) citing Audler v. CBC Innovis Inc., 519 F.3d 239, 255 (5th Cir. 2008) . . . . . . . 20

Bonham v. Bobersky, 2019 U.S. Dist. LEXIS 196457 at *15-16 (M.D. PA., November 13, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Doe v. Board of Education of Prince George's County, 982 F. Supp.2d 641 (D. Md. 2013) . .   26

Doe v. Tex. A&M Univ., 634 F. Supp 3d 365, 383 (S.D. Tex. Oct. 6, 2022) . . . . . . . . . .   25, 29

Estate of Esquivel v. Brownsville Indep. Sch. District, 2018 U.S. Dist. LEXIS 231738 * 16-17 (S.D. TX.- Brownsville Div., September 11, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Estate of T.J. v. Aldine Independent School District, C.A. 4:20-cv-4413, p. 8-10 (S.D. TX- Houston Div., March 12, 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Furstenfeld v. Rogers, No. 03-02 CV 0357 L, 2002 U.S. Dist. LEXIS 11823, at *5 (N.D. Tex. Jul. 1, 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

G.C. v. North Clackamas Sch. Dist., 654 F. Supp. 2d 1226, 1238-1239 (D. Or. 2009). . . . . . . 23

I.A. v. Seguin Indep. Sch. Dist., 881 F. Supp. 2d 770, fn. 13 (W.D. Tex. 2012). . . . . . . . . . . . 23

Joyner v. Dumpson, 712 F2d 770 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Krebs v. New Kensington-Arnold Sch. Dist., 2016 U.S. Dist. LEXIS 159059, 2016 WL 6820402, at *10-11 (W.D,. Pa. Nov. 17, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

PGA Tour, Inc. v. Martin, 532 U.S. 661, 688, 121 S. Ct. 1879, 149 L. Ed. 2d 904 (2001) . . . . 28

Prendergast v. Wylie Indep. Sch. Dist., 2018 U.S. Dis. LEXIS 215109 (E.D. Tex. Dec. 4, 2018) (citing Davis, 526 U.S. at 654) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Ripple v. Marble Falls Indep. Sch. Dist., 99 F. Supp. 3d 662, 691 (W.D. Tex. 2015). . . . . . . . 23

Taylor v. Richmond State Supported Living Center, No. 4:11-3740, 2012 WL 6020372 at *5 (S.D. Tex. November 30, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Thomas v. City of Galveston, Texas, 800 F. Supp.2d 826, 842-846 (S.D. Tex. 2011) . . . . . . . 12

Yarbrough v. Denton Indep. Sch. Dist., 2021 WL 4704579, at *8 (E.D. Tex. Feb. 5, 2021) . . . . 8

**STATE COURT**

Dallas Cnty. Mental Health & Mental Retardation v. Bossley, 968 S.W.2d 339, 341 (Tex. 1998) 8

Los Fresnos Consol. Indep. Sch. Dist. v. Southworth, 156 S.W.3d 910; 2005 Tex. App. LEXIS 1346 (Tex. App. Corpus Christi Feb. 17, 2005, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Texas Regional Mental Health & Mental Retardation Services v. Kinnear, 550 S.W.2d 550, 563 (Tex. App. – Beaumont, 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**FEDERAL CONSTITUTION AND STATUTES**

U.S. Const. amend. XIV, § 1, Equal Protection Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

29 U.S.C. §794; the Americans with Disabilities Act ("ADA"). . . . . . . . . . . . . . . . . . . . *passim*

42 U.S.C. §12101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

42 U.S.C. § 1983 ("Section 1983"). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**RULES & REGULATIONS**

Federal Rules of Civil Procedure 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

 Section 504 of the Rehabilitation Act of 1973 ("Rehab Act") . . . . . . . . . . . . . . . . . . . . . *passim*

**MISCELLANEOUS**

Section 25.085 of the Texas Education Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

NOW COMES JEREMIE KADIAYIZILA and ANETTE NNUZI LUPINI the natural parents and heirs of their son, ESPERANT GLORIIEUX KADIAYIZILA, Deceased ("Plaintiffs" herein) and files this *Response To Defendant's* (hereinafter referred to as "HEB ISD" or "the School District") *Plea To The Jurisdiction And Rule 12(b)(6) Motion To Dismiss* and in support thereof would respectfully show the following:

## I.  <u>BRIEF INTRODUCTION TO THE CASE</u>

1.    On October 8, 2024 Esperant was in physical education class, and became sluggish, fainted and expired and died. As we know during February of the previous Spring Semester, while he was in the same class with the same instructor, Coach Williams, he had also become sluggish and fainted. When Esperant was brought to the hospital, he and his parents learned he had neurological issues and an enlarged heart. Not surprisingly, his treatment provider issued an order that restricted his participation in gym class until further orders.  Fortunately, Staff followed this directive for the rest of the semester. Unfortunately, they failed to develop a written health or accommodation plan to address his emerging needs, which other things included frequent water breaks. Without such a plan, when school started in the Fall, Esperant was apparently put into the same gym class. Apparently, Williams and other Staff failed to adhere to the aforementioned medical orders, and not only permitted Esperant to attend class but made him participate in strenuous running exercises. This led to his death.

2.      Several things occurred between the time he started running and when Esperant collapsed. He soon experienced breathing problems, slowed to a walk, but was admonished and told to keep running. When Esperant asked for a water break that too was refused.  Seemingly, the District had a practice and custom of forbidding students to drink water until they finished an exercise set- and would be punished otherwise- so Esperant kept running.  Soon he was in obvious distress, which even his fellow student recognized. Some spoke out noting that "Esperant shouldn't be running."  Others attempted to hold him up but Williams made them 'let go.' Now both dehydrated and exhausted, and with his heart now "given out' Esperant collapsed on the floor, cut his chin and bled profusely.

3.      The facts are clear.  His death was absolutely preventable.  No jury would disagree. So the question the question for the Court is whether the acts and omissions of the Defendant violated Esperant's civil rights.  The answer at this stage of the litigation is a resounding "yes."  Accordingly the School District's *Plea to The Jurisdiction* Fed. R. Civ. P. 12(b)(6) *Motion To Dismiss* should be denied, in total or in part.

## II. <u>FACTUAL RESUME</u>

A.      THE DISTRICT KNEW ESPERANT HAD A DISABILITY

4.      Esperant was born in March of 2012.  For the Spring 2024 Semester he attended the Donna Park Elementary School.  On or about February 5th Esperant was in Physical Education ("PE") Class with Mr. Damon ("Coach") Williams.  Esperant began to complain of shortness of breath and dizziness. Then he fainted and fell to the ground.  [DE# 15, ¶8 - 15].   His

parents were notified and first took their son to John Peter Smith facility and later to Cook's

Children Hospital. Multiple tests were completed and it was determined he had an enlarged

heart and neurological impairment. A "Physician's Order" noted Esperant was not permitted

to participate in PE classes until released to do so due to these conditions. His father provided

this note to District Staff including the Principal, Julie McAvoy; the School Nurse, Taylor

Valentine; the Physical Education Instructor, Damon Williams and the classroom teachers.

Due to having an enlarged heart he had an increased need for hydration as dehydration

causes blood volume—the amount of blood circulating throughout a body—to decrease.[1] As

a result, sodium levels in the blood increases, thickening the blood and making it harder for

it to circulate. In turn, this taxes the heart muscles, raises the heart rate, causes blood pressure

to drop, dizziness and even death.[2] Due to these needs, Espeant would bring lots of water

to school to stay hydrated. [DE# 15, ¶16- 21].

B.    APPLICABLE LAW AND SCHOOL BOARD POLICIES & PROCEDURES

5.    The Board has developed policies and procedures predicated upon commentary found in the

statute, rules and regulations related to Section 504 of the Rehabilitation Act of 1973, 29

U.S.C. §794 ("Rehab Act"); *see also* 34 C.F.R. Subpart D, §104.31- 104.39; *see* FB

---

[1]. VO2 max (also maximal oxygen consumption, maximal oxygen uptake, peak oxygen uptake or maximal aerobic capacity) is the maximum rate of oxygen consumption measured during incremental exercise (exercise of increasing intensity). The name is derived from V - volume, O2 - oxygen, max - maximum. Maximal oxygen consumption reflects the cardiorespiratory fitness of an individual *and is an important determinant of their endurance capacity during prolonged exercise.* https://en.wikipedia.org/wiki/VO2_max

[2]. *See* https://www.healthcentral.com/article/how-dehydration-affects-your-heart

(LOCAL), FB (LEGAL) EQUAL EDUCATIONAL OPPORTUNITY. Among other things, a student with a disability, like Esperant must receive equal opportunity to participate safely in all educational services provided their non-disabled peers with reasonable accommodations and modifications to do so. Staff also must also provide of an *Individual Health Plan*. Staff must trained on such standards of care. Separately, the Texas Education Code §33.204, notes that a coach, trainer for (extracurricular) athletic activities may not encourage or permit participation in any unreasonably dangerous athletic technique, practice or routine that unnecessarily endangers the health of a student. Staff is prohibited from using exercise, excessive or not, as a punishment. *See also* Texas Education Code §33.0011 Board Policy FO- STUDENT DISCIPLINE [LEGAL, LOCAL]. [DE# 15, ¶22-26, 128].

6.    The Child Nutrition & WIC Act of 2004 requires a District participating in a nutrition program to establish policies assuring access to water.[3] The U.S. Department of Disease Control and Prevention ("CDC") also provides direction called "Water Access In Schools."[4] The HEB ISD provides free lunches and has to follow the above-referenced programs.[5] Board Policy FFA - STUDENT WELFARE WELLNESS AND HEALTH SERVICES [LOCAL]. Staff should be trained on such measures. [DE# 15, ¶29- 30].

_____

[3]. *See* https://assets.jhsph.edu/clf/mod_clfResource/doc/Wellness_Policy_Language_Water_Access_in_Schools.pdf

[4]. *See* https://www.cdc.gov/school-nutrition/water-access/index.html

[5]. *See* https://www.hebisd.edu/departments/federal-programs/federal-programs

C.    THE DISTRICT FAILED TO ACCOMMODATE ESPERANT'S DISABILITY

7.    District Staff was aware of Esperant's medical condition, yet never formally identified him

as a student with a disability. That would have initiated a formal "504 Accommodation Plan"

or "Individualized Health Plan". They failed to communicate with his medical team nor did

they seek a copy of his records or attempt to learn about his needs for additional hydration.

They never communicated with his treatment team to find when, if ever, he could return to

normalcy. Fortunately, at least through the rest of the Spring of 2024, Staff followed the

*Physician's Orders.* As such that the failure to have a formal 504 or Health Plan was of no

consequence. Sadly, that and other failures proved to be fatal in the Fall. [DE# 15, ¶31- 37].

D.    PHYSICAL EDUCATION CLASS PRACTICES & CUSTOMS

8.    District Staff including Williams followed an ISD wide custom and practice of not permitting

students to drink water until after they finished running the required number of laps in PE

Class. Apparently, there was also a strict policy all water bottles had to remain inside near

the corners of the gym when students were outside. If a student violated this policy, they

were punished by losing recess time. This practice was well-known to all the students taking

PE, including Esperant. [DE# 15, ¶38 - 41].

D.    THE FALL 2024 SEMESTER

9.    When Esperant returned to school after the first incident and continuing into the Fall

Semester Esperant would bring 4 or 5 bottles of water to keep himself hydrated. Staff knew

of his need for and consumption of water. Notwithstanding, despite the fact that the

Physician's Orders had never been rescinded or modified, Esperant was required to attend

P.E. No 504 Accommodation Plan related to participation in P.E. was developed. Nor was

a Health Services Plan developed to address his need  for hydration.  Mr. William's was the

P.E. teacher again.  The family believed their son benefitted from socialization and some very

light exercises. When going to P.E. Esperant was known to bring at least one water bottle

with him and would often ask Staff for a water break.  [DE# 15, ¶42 - 56].

10.    On October 8th Williams had the entire class run outside.  By 9:00am it was well over eighty

(80) degrees.[6]   Esperant requested but was denied water. When he experienced breathing

problems he told Williams he needed to rest but was not permitted to do so. Quite the

opposite - "Coach" instead told him to "speed up."  Now obviously struggling, his fellow

students attempted to hold Esperant up, but Williams admonished them for doing so.  Now,

tired and dehydrated, and even with  punishment looming he tried to get to his water bottle

but collapsed before he could do so.  Staff attempted to use the AED apparatus while

Emergency Medical Services was contacted.  His parents were also contacted and told their

son was being taken to an Emergency Room, but by then he was already deceased.  When

Mr. Kadiayizila went to the School to see a video he was shown only a portion of the video

which was obviously fragmented.  [DE# 15, ¶57- 66, 73]

### III. THE PLEA AND MOTION SHOULD BE DENIED
### BECAUSE THE DISTRICT SPOILED OR WITHHELD EVIDENCE

---

[6].  Plaintiffs ask the Court to take Judicial Notice, pursuant to Fed. R. E. 201 of information about the weather on October 4, 2024 found on the Weather Channel website, *see* www.weather.com.

11.     Plaintiff alleges the video of his son's dying moments and death were altered. Plaintiffs have

alleged a "Spoliation Claim" against the District. [DE# 15, ¶73, 110, 111]. The spoliation

of evidence doctrine concerns the destruction or the significant alteration of evidence. If so,

a trial court may exercise its discretion to impose sanctions on the responsible party or

"permit an adverse inference against the spoliator. Van Winkle v. Rogers, 82 F.4th 370, 374

(5th Cir. 2023) because "that the evidence would have been unfavorable to the party

responsible for the spoliation. Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998).

At a later stage in the proceedings the 5th Circuit generally requires the party who seeks

sanctions to show that the alleged spoliator engaged in "bad faith or bad conduct." Van

Winkle at 374, though at this stage of the litigation without the benefit of discovery, a lesser

sanction, like denying a motion to dismiss, is warranted. Moll v. Brown & Root, Inc., 2004

U.S. Dist. LEXIS 13247 at *10-12 (E.D. LA, July 14, 2004). Accordingly, the District's

*Motion To Dismiss* and by extension, its *Plea to The Jurisdiction* should be denied.

## IV.  THE PLEA TO THE JURISDICTION SHOULD BE DENIED

12.     Plaintiffs incorporate by reference all the above-related paragraphs, and each one below, and

incorporates by reference the one above, as well as those below, with the same force and

effect as if herein set forth.

A.      THE SCHOOL DISTRICT'S POSITION

13.   The District argues it is immune from state-law wrongful death and survivorship claims

*citing* Dallas Cnty. Mental Health & Mental Retardation v. Bossley, 968 S.W.2d 339, 341

(Tex. 1998) for this proposition.   Accordingly, they posit that these claims should be

dismissed. Yarbrough v. Denton Indep. Sch. Dist., 2021 WL 4704579, at *8 (E.D. Tex. Feb.

5, 2021). [DE# 17, p. 2-4].

B.   PLAINTIFF'S RESPONSE

14.   It is generally true that governmental employees and by extension the School District's they

work for, generally have *Immunity* that protects each from liability. Kassen v. Hatley, 887

S.W.2d 4, 8, 38 Tex. Sup. Ct. J. 73 (Tex. 1994).  Nevertheless it does not in certain instances,

especially when the acts and related omissions are considered ministerial. Los Fresnos

Consol. Indep. Sch. Dist. v. Southworth, 156 S.W.3d 910; 2005 Tex. App. LEXIS 1346

(Tex. App. Corpus Christi Feb. 17, 2005, no pet.).

15.   Here, the Plaintiffs claim that certain acts of Staff were ministerial. For instance, it is

Plaintiffs position that following doctor's orders are ministerial.  Additionally, that following

Section 504 of the Rehabilitation Act of 1973 and derivative School Board Policies &

Procedures related to accommodations for the needs of a child with a disability like Esperant

are also ministerial. Morever, that following federal and state requirements about hydration

are as well. ministerial. Further, that following State Law and Board Policies & Procedures

not to use exercise as a punishment, are likewise ministerial.  As there are facts issues as  to

whether to the acts and omission of staff were ministerial the *Plea* can be denied at this juncture of the proceedings.

16. Additionally and in the alternative, even if the acts and omissions noted above are not ministerial then the fail to abide by such professional standards of waives immunity as the Courts do "impose liability for violations of the law or for reckless conduct.'" <u>City of Amarillo v. Martin</u>, 971 S.W.2d 426, 431, 41 Tex. Sup. Ct. J. 870 (Tex. 1998). Here there a fact issue as to whether Williams was reckless when having Esperant participate in physical education class at all. Or when not permitting him to have water when he was thirsty? Or when not permitting him to walk rather than run? Or when not permitting his friends to hold him up? Or when not listening to students telling him that Esperant should not have been running at all? Obviously any and all the above, whether viewed separately or in concert with each other, create a fact question as to whether or not William's acts and omissions were reckless under the totality of the circumstances. As in the above paragraph, and in any case the *Plea* should be denied at this juncture of the proceedings.

## V. <u>STANDARD OF REVIEW FOR MOTION TO DISMISS</u>

A. For A 12(b) Motion To Dismiss In General

17. Plaintiffs underscore the fact that at this stage of the proceedings they must merely plead enough facts to state a claim is plausible on its face. Bell Atlantis v. Twombly, 550 U.S. 544, 570 (2007). Their complaint must be liberally construed in their favor and the allegations contained therein must be taken as true. Leatherman v. Tarrant County Narcotics Intelligence

and Coordination Unit, 507 U.S. 163, 164 (1993) as must all inferences.  Collins v. Morgan

Stanley Dean Whitter, 224 F3d 496, 498-499 (5th Cir. 2000). Because of such standards of

review, these motions to dismiss are viewed with disfavor and are rarely granted. Lowrey v.

Texas A&M University System, 117 F.3d 242, 247 (5th Cir. 1997). Rather, liberal discovery

rules and summary judgment motions, should be used to define disputed facts and issues and

to dispose of unmeritorious claims. Furstenfeld v. Rogers, No. 03-02 CV 0357 L, 2002 U.S.

Dist. LEXIS 11823, at *5 (N.D. Tex. Jul. 1, 2002).

B.      Standards Of Review For Discrimination Cases

18.     In Roger Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000) the Supreme

Court noted the exercise of looking to the facts and reasonable inferences is particularly

crucial discrimination cases "as the question facing triers of fact in discrimination cases is

both sensitive and difficult." Further, lower Courts should not treat discrimination cases with

more scrutiny than other cases dealing with questions of fact, *citing* St. Mary's Honor Center

v. Hicks, 509 U.S. 502, 524; 125 L. Ed. 2d 407; 113 S. Ct. 2742 (1993). This public policy

is even more appropriate when dealing with statutes that address civil rights of the litigants

and are remedial in nature, like Section 504 and the ADA, as they are in this cause.

19.     The Supreme Court has noted in a Title IX case (which is equally applicable to other civil

rights cases, like the ADA and Section 504) is that, "[t]he statute is broadly worded."

Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 179 (2005). Hence, "[t]here is no doubt

that 'if we are to give [these statutes] the scope that its origins dictate, we must accord it

a sweep as broad as its language.'" North Haven Bd. of Educ. v. Bell, 456 U.S. 512, 521 (1982); *quoting* United States v. Price, 383 U.S. 787, 801 (1966). Further, "[d]iscrimination is a term that covers a wide range of intentional unequal treatment; by using such a broad term, Congress gave the statute a broad reach." Jackson, 544 U.S. at 175. Further, "Congress surely did not intend for federal moneys to be expended to support the intentional actions it sought by statute to proscribe." Franklin v. Gwinnett County Pub. Schools, 503 U.S. 60, 75 (1992). Moreover:

"Statutes of rehabilitation should be construed in a liberal and humanitarian mode thus effectuating successfully the legislature's objective intentions. Such construction of rehabilitative statutes promote the public interest, public welfare, public state policy and the police powers. Such salutary constructions properly disregard technical and meaningless distinctions but give the enactment the most comprehensive application of which the enactments are susceptible without violence to the language therein. Deep East Texas Regional Mental Health & Mental Retardation Services v. Kinnear, 550 S.W.2d 550, 563 (Tex. App. – Beaumont, 1994);" *see also* Tchereepnin v. Knight, 389 U.S. 332, 336 (1967) [remedial legislation should be construed broadly to effectuate its purpose].

20.    Plaintiffs' *Amended Complaint* clearly and easily meets the standards of Rules 8, 12(b)(6) as contemplated by Twombly relative to their claims based upon, the ADA and Section 504. The District's *Motion to Dismiss* should be dismissed, in total or in the alternative, in part.

C.    Right To Amend

21.    Nevertheless, if the Court believes that Plaintiffs have failed to adequately state a claim upon which relief can be granted, then before granting the motion, Plaintiffs should be given the opportunity to replead. Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002) [notes that the Fifth Circuit supports the premise that "granting leave to

amend is especially appropriate . . . when the trial court has dismissed the complaint for failure

to state a claim ...].

## VI.  THE CONSTITUTIONAL CLAIMS ARE PLAUSIBLE

A.    ABOUT CONSTITUTIONAL CLAIMS

22.    Liability under Section 1983 can be imposed on the School Board if Esperant can show (1) a

violation of a right secured by the Constitution or laws of the U.S. and (2) the deprivation was

committed by a person acting under color of law and (3) the acts or omissions of the Board were

a moving force in the constitutional injuries experienced.  *See* Jett v. Dallas Ind. Sch. Dist., 7 F.3d

1241, 1245–47 (5th Cir. 1994).    The evidence required at this stage is not onerous nor do

allegations need be plead in exhaustive detail, *see* Thomas v. City of Galveston, Texas, 800 F.

Supp.2d 826, 842-846 (S.D. Tex. 2011) [explaining "only minimal factual allegations should be

required at the motion to dismiss stage."]. Simply, Esperant's must plead facts "to state a claim

for relief that is plausible on its face," that is, enough "to raise a reasonable expectation that

discovery will reveal evidence" in support.  Id, *citing* Bell Atlantic Corp. v. Twombly, 550 U.S.

544, 570 (2007).  He has done so.

B.    ESPERANT HAD CONSTITUTIONAL RIGHTS AT SCHOOL

23.    Section 25.085 of the Texas Education Code, requires all children until they reach the age of 19

to attend school. The 'compulsory education' statute creates a "property interest" protected by the

Due Process Clause of the 14th Amendment. Swindle v. Livingston Parish Sch. Bd., 655 F.3d 386

(5th Cir. 2011), *see also* Goss v. Lopez, 419 U.S. 565 (1975).  The student not only has a right

to receive that education but the Board must provide it. Moreover, Espertant has a right to "life, liberty and pursuit of happiness, as well as this property interest at school. Moore v. Willis Independent School District, 233 F.3d 871 (5th Cir. 2000). He meets this threshold element.

C.    THE STATE CREATED DANGER CLAIM IS PLAUSIBLE

    1.    The School District's Argument

24.    The District argues that Plaintiffs' constitutional claims fail because the District does not have special relationship with Esperant. Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 857 (5th Cir. 2012). Nor does the 5th Circuit recognize a claim based a state-created danger and in any case, the issues or facts pled in this cause support such a claim. *See* Watts v. Northside Indep. Sch. Dist., 37 F.4th 1094, 1096 (5th Cir. 2022). [DE# 17, p. 9- 12]. Plaintiffs allege that Esperant has met the elements of such a claim as articulated by the 5th Circuit, and as such the State-crated Danger Claim is ripe for consideration.

    2.    About The State Created Danger Theory Of Liability

25.    Fisher v. Moore, 73 F.4th 367, 372 (5th Cir. 2023) was case where a student was not correctly supervised and was sexually molested by a third party, another student. It was brought to the District's attention. Even so, the victim was left unsupervised again and was sexually molested again. Among other things, the family argued that the School Board was liable pursuant to the *State-Created Danger* theory. The District Court rejected this argument, as did the Panel both confirming that under 5th Circuit precedent the "right to be free from state-created danger is not clearly established in this circuit." The Appellant sought a *Rehearing En Banc* which was denied

by a 9-7 vote. Circuit Judge Willett, who wrote for the majority noted it was denied, for the same reasons it always has been denied, "... but wrote that it could be plausible where:

> "... For example, ... we indicated that a state-created danger theory would require "a plaintiff [to] show [1] the defendants used their authority to create a dangerous environment for the plaintiff and [2] that the defendants acted with deliberate indifference to the plight of the plaintiff. We also stated that the defendant "'must have used their authority to create an opportunity that would not otherwise have existed for the third party's crime to occur.'"

Esperant meets these elements.

###### a.    The Defendants Created A Dangerous Environment

26.    The state-created danger doctrine applies when state actors use their authority to create an opportunity that would not have existed otherwise. Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 865 (5th Cir. 2012) (en banc). The facts here are even more direct and damning. There was no third-party criminal. The state actor himself, Coach Williams, was the agent of harm. He used his state-conferred authority over his P.E. class to (a) compel Esperant's participation in a dangerous athletic activity, directly contravening a Physician's Order provided to the school; (b) denying Esperant's explicit pleas to stop and rest when experiencing acute medical distress; (c) denying Esperant access to own water, in furtherance of a school custom that forbade drinking water before all laps were completed; and (d) actively preventing other students from rendering aid to Esperant when he was collapsing.

27.    This is not a "failure to protect" case as contemplated by by DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189 (1989). The state did not fail to protect Esperant

from the latent danger of his heart condition; instead, the state, through its agent, affirmatively and deliberately triggered that condition with lethal results. This crucial distinction takes this case entirely outside the ambit of the precedent cited by Defendant. The causal chain is direct and unbroken. Coach Williams's commands were the instruments of harm

28.     The argument is not merely about an exception to DeShaney. It is about the core, undisputed principle of substantive due process: that the state cannot use its coercive power to arbitrarily and maliciously inflict physical injury. Again, this is not about a "state-created danger" from a third party. This is a case about a "state-inflicted injury." This framing directly addresses the Fisher majority's ane ven the minority post-Dobbs concern about creating new, textually unmoored rights. The right to bodily integrity against arbitrary and abusive state action is the most traditional and "deeply rooted in this Nation's history and tradition" of all due process rights. See Washington v. Glucksberg, 521 U.S. 702, 721 (1997).

29.     The Coach's actions *shock the conscience* and constitute *deliberate indifference.*" The touchstone for a substantive due process violation is official conduct that "shocks the conscience." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). The Supreme Court clarified that the level of culpability required to meet this standard depends on the context. In high-pressure, emergency situations involving the police, a plaintiff must show a malicious "purpose to cause harm." Id. at 854.  However, in non-emergency situations when actual deliberation is practical for state officials, conduct demonstrating "deliberate indifference" to a person's rights is sufficient to shock the conscience." Id. at 851.

b.      The Defendants Acted With Deliberate Indifference

30.    The 5th Circuit defines deliberate indifference using a subjective test: the official "must be both

aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference." Hernandez v. Tex. Dep't of Protective & Regulatory

Servs., 380 F. 3d 872, 881 (5th Cir. 2004). The Complaint satisfies this standard. Coach Williams

saw Esperant collapse in gym, and later learned of his heart condition (the fact from which the

inference of risk could be drawn it could happen again), failed to give water when he was thirsty,

failed to let him walk when asked, saw his physical distress and heard some students telling him

that Esperant was in distress (confirming the risk of injury was active and then present), and yet

forced Esperant to continue (demonstrating he drew the inference and consciously disregarded

it). The court in Hernandez made clear that an official need not be warned of a "specific danger"

but that knowledge of a "substantial risk of serious harm" is sufficient. Id. The victim's unique

vulnerability (such as a child with a known, severe medical condition) and Williams previous

awareness of his disabling condition and its effects upon Esperant, only heightens the

conscience-shocking nature of Coach Williams' deliberate indifference. In summary, a middle

school P.E. class is the antithesis of a high-speed chase.  It is a controlled, structured, and

deliberative environment.  Here there is a litany of incidents whereby Coach Williams turned a

"blind eye" to the ever-increasing and overt manifestations of Esperant again experiencing serious

health issues due to heart failure. Yet Coach William's decisions to press on, then to deny water

and then to forbid aid was not a split-second mistake. It was a conscious and deliberate disregard

of a known and substantial risk of serious harm.

    4.    This Issue Is Ripe For Consideration By This Court

31.    Jacques L. Wiener, Jr., Circuit Judge, concurred in <u>Fischer</u> and wrote that:

"... we are bound by this court's precedent, I disagree with its refusal to rehear this case en banc and join the ten other circuits that have now adopted the state-created danger cause of action under 42 U.S.C. § 1983, thereby permitting individuals to sue state actors for damages resulting from their acts or failures to act. It is well past time for this circuit to be dragged screaming into the 21st century by joining all those other circuits that have now unanimously recognized the state-created danger cause of action. I acknowledge that we could only do so by taking this case en banc, but we have yet again failed to do so."

Stephen A. Higginson and Dana M. Douglas, Circuit Judges, joined by Stewart, Elrod, Haynes,

and Graves, Circuit Judges, even more strongly wrote in a dissent:

"This case yet again squarely presents the question of whether a plaintiff may state a claim under 42 U.S.C. § 1983 where a state actor "created or knew of a dangerous situation and affirmatively placed the plaintiff in that situation." <u>Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys,</u> 675 F.3d 849, 864 (5th Cir. 2012) (en banc). For over a decade, our court has refused to answer. <u>Id.</u> at 865. To date, ten other circuits have recognized this "state-created danger doctrine." <u>Irish v. Fowler,</u> 979 F.3d 65, 73-75 (1st Cir. 2020) (adopting the doctrine and collecting cases from the Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, and D.C. Circuits that reach the same result). Our indecision is a disservice to injured plaintiffs ... , our delay is blocking percolation, which "allows a period of exploratory consideration and experimentation by lower courts before the Supreme Court ends the process with a nationally binding rule." <u>California v. Carney,</u> 471 U.S. 386, 400 n.11, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985) (Stevens, J., dissenting) (citation omitted)."

Plaintiffs posit that this case is ripe for (re)consideration and percolation because unlike many of

the cases cited by the Defendant, and even by the 5th Circuit in rejecting consideration of this

theory of liability, here Esperant was injured by a state actor, Coach Williams and not a third party

like the other cases relied upon in rejecting this theory. This is not the landscape of settled law.

Rather, it is the landscape of a doctrine awaiting the right vehicle.

D.    OTHER CLAIMS UNDER THE FOURTEENTH AMENDMENT ARE PLAUSIBLE

32.    For purposes of clarity Esperant abandons his Equal Protection claim and believes it is best

addressed under his disability discrimination claims. He maintains his *failure to train* and/or

supervise claim as contemplated by the Due Process Clause of the 14th Amendment is plausible.

1.    About Municipal Policy Or Practice Claims

33.    In order to establish municipal liability under Section 1983, Esperant must allege (1) the

constitutional violation was a direct result of the execution of an official "custom" or "policy" by

the Board; (2) was approved or sanctioned by the Board; (3) by a final policymaker who acted

with deliberate indifference; and (4) the custom or policy was the "moving force" behind the

constitutional violation. Penny v. New Caney Indep. Sch. Dist., 2013 WL 2295428, at *4 (S.D.

Tex. 2013).

34.    The 5th Circuit defines official policy as (1) a policy statement, ordinance, regulation, or decision

officially adopted and promulgated by the Board .. or (2) a persistent, *widespread practice*

(emphasis added) of [district] officials or employees, which, although not authorized by officially

adopted and promulgated policy, is so common and well settled as to constitute a custom that

fairly represents [district] policy.  Eugene v. Alief Indep. Sch. Dist., 65 F.3d 1299, 1304 (5th Cir.

1995). Generally speaking an isolated event cannot trigger Section 1983 Liability, *see* Rivera v.

Houston Indep. Sch. Dist., 349 F.3d 244, 248 (5th Cir. 2011) but there are exceptions as will be

discussed below.  Importantly the acts, omissions or failures by the Board mut rise to the level of

deliberate indifference.[7] *See* <u>Synder v. Trepagnier</u>, 142 F.3d 791, 795 (5th Cir. 1998).

2.      The School District's Position

35.     The District cites relevant caselaw and posits that Plaintiffs cannot meet the elements.

Specifically, that they have not pled sufficient facts to show the Board had an unconstitutional

practice or custom that was the moving force in causing the injuries Esperant experienced that left

unaddressed, led to his death. In somewhat more particularity they note that the failure to provide

Esperant water was not a district-wide custom or practice. Further, Plaintiffs can't show the

identity of a policymaker or the necessary causal link.  [DE# 17, p. 5-11].

3.      Plaintiffs Response

36.     First and foremost Plaintiffs incorporate by reference as if fully set forth therein, the section above

related to State-created danger in that it likewise supports the below-argued failure to

train/supervise claim.  In any case, by way of its own written response, the District admits that

Staff at the Donna Park Elementary School had a practice and custom of withholding water in lieu

of a punishment for not completing a expected physical exercise in gym class.  They are incorrect

in arguing it needs to be district-wide, rather it only has be widespread.  Here is the custom was

"admittedly" for an entire middle school. Esperant meets this "widespread" element.  The other

elements are more closely met in Esperant's argument the District failed to train/supervise staff.

---

[7].  This element was addressed in the above noted section.

37.    In <u>Canton v. Harris</u> 489 US 378 (1978) the Supreme Court wrote:

"Under 42 U.S.C. §1983 .... violations result from the municipality's failure adequately to train its employees, only if that failure reflects a deliberate indifference on the part of the municipality to the constitutional rights of its inhabitants and thus constitutes a municipal "policy," .... where it is shown ... constitutional rights were substantially certain to result, ...(where) failure to train may fairly be said to represent a policy for which the municipality is responsible, and for which it may be held liable where injury results, if, ... the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that municipal policymakers can reasonably be said to have been deliberately indifferent to the need--as, for example, the need to train police officers ... on the use of deadly force can be said to be so obvious that failure to do so may properly be characterized as deliberate indifference to constitutional rights .... "

38.    Normally there must be a 'pattern' of constitutional violations, <u>Sanders-Burns v. City of Plano</u>, 594 F.3d 366, 381 (5th Cir. 2010) but there is a second manner, absent a pattern. Deliberate indifference can be inferred if a fact finder determines the risk of constitutional violations was known or should have been an "obvious" or "highly predictable consequence" of an alleged training inadequacy. <u>Canton</u> at 388; *see* <u>Littell v. Houston Indep. Sch. Dist.</u>, 894 F.3d 616 (5th Cir. 2018); *see also* <u>Burge v. St. Tammany Par.</u>, 336 F.3d 363, 373 (5th Cir. 2003). This duty is train is especially pronounced when a failure to do so affects a right to bodily integrity and/or life, liberty and the pursuit of happiness; *see* <u>Littell</u> such that the failures to do so could leave a student severely injured or worse, <u>Bonham v. Bobersky</u>, 2019 U.S. Dist. LEXIS 196457 at *15-16 (M.D. PA., November 13, 2019) as occurred in this case.   Indeed, this "single-incident exception" is best reserved for where there is an absolute inference staff were not trained at all, <u>Ayon v. Austin Indep. Sch. Dist.</u>, 2024 U.S. Dist LEXIS 19910, 2024 WL 1572408, at *16 (W.D. Tex. Feb. 5, 2024) *citing* <u>Littell</u>, as also alleged in this case.

39.    Here Defendant does not deny Staff were not trained on the duty to follow State Law and School

Board Policies & Procedures on not using exercise as a punishment.  Nor does the Defendant

deny that Staff were not trained on the Federal Law and School Board Policies & Procedures on

the duty to assure students were hydrated, especially during physical education matters.  Nor does

the Defendant deny that Staff were not trained on the overall duty to assure  water wasn't withheld

during the punishment of a student.  Taken together, the School Board had a duty to assure Staff

like Coach Williams were trained on these matters and he and others were not.  Here the facts are

self-evident that these failure to train absolutely were the moving force in Esperant's injuries, i.e.,

dehydration and resulting death.  As a matter of course because the School Board had a duty to

train staff on such matters and did not, the failure to supervise claim is likewise plausible.  Taken

together these failures can be viewed by a reasonable juror as evidence that the Board did not take

the training of staff "with the seriousness they deserve" G.C. v. North Clackamas Sch. Dist., 654

F. Supp. 2d 1226, 1238-1239 (D. Or. 2009) and evidence of deliberate indifference.  See Gebser

v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291-292, 118 S. Ct. 1989 (1998).  Moreover, the

5th Circuit has consistently instructed district courts to leave it to juries to decide whether a

"statutorily authorized policymaker ha[s] promulgated an unconstitutional policy" or practice, or

resolve disputed facts.  Groden v. City of Dallas, 826 F.3d 280, 285 (5th Cir. 2016).

40.    Last, and in any case the District does not address the failure ti train and/or supervise claim at all.

It is thus waived.  L&A Contracting v. Southern Concrete Services, 17 F.3d 106, 113 (5th Cir.

1994). Boggs v. Krum Independent School District, 376 F. Supp. 3d 714 (E.D. TX- Sherman

Division, March 21, 2019) *citing* <u>Audler v. CBC Innovis Inc.</u>, 519 F.3d 239, 255 (5th Cir. 2008).

<u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069, 1075 (5th Cir. 1994) ["If the moving party fails to meet this initial (pleading) burden, the motion must be denied, regardless of the nonmovant's response."]. Even if they had, and as noted above Esperant nevertheless meets the elements.

### VII.  ARGUMENT AND AUTHORITIES -
### THE DISCRIMINATION BASED UPON DISABILITY CLAIMS ARE PLAUSIBLE

A.    ABOUT INJURIES AT A PUBLIC SCHOOL

41.    In Estate of Lance v. Lewisville Independent School District, 743 F.3d 982, 992 (5th Cir. 2014) the Panel discussed the claims that a student could experience at school.  One pursuant to Section 504 of the 1973 Rehabilitation Act, 29 U.S.C. 794 ("Rehab Act") requires a school district to provide a student with a disability a *Free Appropriate Public Education* ("FAPE") and is termed a "failure to provide claim," Id. at 991-992.  The Panel noted a second, termed a "failure to keep safe claim."  Here a District is liable if it "acted unreasonably under the known circumstances" if on notice to a student's disability-based needs and the child experienced a deprivation of educational opportunities provided to his non-disabled peers. *See* <u>Davis v. Monroe County Board of Education</u>, 526 U.S. 629 (1999), *see* <u>Lance</u> at 995, fn. # 5.  Last, the Panel recognized a simple "failure to accommodate" or "failure to modify" claim. *See* <u>Delano-Pyle v. Victoria County</u>, 302 F. 3rd 567, 574-7 (5th Cir. 2002). This claim is actionable not only pursuant to the Rehab Act but also pursuant to the Americans With Disabilities Act ("ADA"). Plaintiffs have also pled a "Disparate Treatment"claim. [DE# 15, ¶86- 93].

A.    THE "FAILURE TO IDENTIFY" CLAIM IS PLAUSIBLE

42.    In his amended complaint Esperant argued he was a student with a disability. The District does not deny he was a student with a disability that affected a major life activity, his breathing, drinking and exercising, Plaintiffs more specifically argued the School District had a formal duty to identify him as such but did not. [DE# 15, ¶86].  In the *Motion To Dismiss* they do not deny they failed in this duty, Nor do they deny they failed to convene a *Section 504 Accommodation Committee* Meeting to address Esperant's enlarged heart, neurological problems and inability to participate in physical education class. Nor do they deny that they failed to develop an *Individualized Health Plan*, also as required by Section 504 and School Board Policies & Procedures.

43.    Rather they argue, that these failures were not due to deliberate indifference. [DE# 17, p. 15]. Here they rely upon I.A. v. Seguin Indep. Sch. Dist., 881 F. Supp. 2d 770, fn. 13 (W.D. Tex. 2012), Ripple v. Marble Falls Indep. Sch. Dist., 99 F. Supp. 3d 662, 691 (W.D. Tex. 2015), Rodriguez v. Muzyka, 543 Fed. Appx. 363 (5th Cir. 2013) to support their position but none of these cases help them.   First, they were all decided pursuant to a motion for summary judgment which by way of inference supports Plaintiffs claims that their the motion to dismiss should be denied so that discovery can ensue, both in general and as to this claim in particular.  Moreover these cases don't help them because all were adjudicated on the professional bad faith or gross misjudgement standard of review, which even Defendant's notes is no longer relevant.  Maybe most importantly of all, none address "the failure to identify claim" at all.  Here the School Board

Policies & Procedures connote an absolute non-delegable duty to identify students (called "child find") like Esperant and serve them under the Rehabilitation Act accordingly. *See* 34 C.F.R. §104.32. Because "child find " is an affirmative duty, a district's obligation to evaluate can be triggered even if the parent doesn't request an evaluation especially when there is a reasonable suspicion the student has a disability; *see, e.g.,* Aurora (CO) Pub. Schs., 61 IDELR 83 (OCR 2013) [districts can not require a parent to request an evaluation before they will consider one); North Kansas City (MO) #74 Sch. Dist., 72 IDELR 166 (OCR 2017) [know a student's was hospitalized should have prompted the district to conduct an evaluation]. Importantly, deliberate indifference does not apply but even if it did, Esperant can meet the elements. Surely a student who has been hospitalized after fainting at school, being hospitalized, found to have an enlarged hear and a neurological condition with a doctors note confirming same, satifies the ets noted Hernandez v. Tex. Dep't of Protective & Regulatory Servs., 380 F. 3d 872, 881 (5th Cir. 2004). This theresxhold claim is plausible.

B.    THE DISPARATE TREATMENT CLAIM IS PLAUSIBLE

44.    1A student who is subject to "disparate treatment" on the basis of disability may bring a Section 504 action if (1) he is an individual with a disability under the act; (2) is otherwise qualified for public school education; (3) has been excluded from a program or activity or denied the benefit of a program solely by reason of his disability and (4) the district receives federal assistance. Joyner v. Dumpson, 712 F2d 770 (2d Cir. 1983); Doe ex rel. Doe v. Berkeley County Sch. Dist., 2:13-cv-3529-PMD (D.S.C. 11/30/15) [finding disparate treatment when student placed in wrong

class]. Here the District failed to address this separate cause of action and it thus waived. L&A Contracting v. Southern Concrete Services, 17 F.3d 106, 113 (5th Cir. 1994). Here and in any case Esperant meets these elements. It is uncontroverted he is individual with a disability under the act, is otherwise qualified for public school education and the district receives federal assistance. As noted above, Esperant was denied the benefits of many things, including and especially to safely participate in physical education classes to the same extent as hin-non-disabled peers. safely. This claim is also plausible.

C.    THE FAILURE TO KEEP SAFE CLAIM IS PLAUSIBLE

45.    In order for Esperant to sustain an unsafe educational environment claim (1) he must show he was he was an individual with a disability; (2) the environment was unsafe; (3) was sufficiently severe or pervasive that it altered the condition of his education; (4) the defendant was on notice of such an environment and (5) the defendant was deliberately indifferent to the lack of safety. Doe v. Tex. A&M Univ., 634 F. Supp 3d 365, 383 (S.D. Tex. Oct. 6, 2022) *citing* Lance, 743 F.3d at 996. Importantly, the Courts have declined to dismiss claims at this stage where a person with a disability has experienced physical abuse, injury or death Doe at 384 *citing* Taylor v. Richmond State Supported Living Center, No. 4:11-3740, 2012 WL 6020372 at *5 (S.D. Tex. November 30, 2012).

46.    It is uncontroverted that Esperant was a person with a disability. It is uncontroverted that the environment for him was unsafe. In examining whether discrimination is sufficiently severe or pervasive in the context of a hostile educational environment claim, the constellation of

circumstances is considered, *see* Davis v. Monroe County, Bd. of Educ, 526 U.S. 629 (1999).

In Carmichael v. Galbraith, 574 Fed. App'x 286, 289-290 (5th Cir. 2014) the Panel found daily

name-calling was sufficient. In Doe v. Board of Education of Prince George's County, 982 F.

Supp.2d 641 (D. Md. 2013) that Court found four incidents of inappropriate touching was

sufficient to put a school notice of severe and pervasive harassment; *see also* Davis where the

Court noted that six instances in six months was actionable.   Here Esperant satisfies this element.

The District was on notice of his enlarged heart and neurological condition and doctor's orders

to refrain form physical education class, yet they let him participate in it anyway and without

sufficient hydration.  based upon te past incident, they knew he needed observation in general and

especially at the gym. Taken together this day to day mistreatment can be easily be considered

pervasive.   Moreover, to maintain an unsafe educational environment claim, the failures must

have a "concrete, negative effect" on the plaintiff. Prendergast v. Wylie Indep. Sch. Dist., 2018

U.S. Dis. LEXIS 215109 (E.D. Tex. Dec. 4, 2018) *citing* Davis at 654. Such "negative effects"

can include declining grades or having to be hospitalized, *citing* Davis, 526 at 634; Murrell v. Sch.

Dist. No. 1, Denver, Colo., 186 F.3d 1238, 1248-49 (10th Cir. 1999).  It is uncontroverted the

injuries he experienced the ultimate deprivation of educational opportunities because he died and

could no longer attend school.

47.    For the purposes of "actual notice," an appropriate person is "an official of the recipient entity

        with authority to take corrective action to end the unsafe environment,  Gebser v. Lago Vista

        Indep. Sch. Dist., 524 U.S. 274, 291, 118 S. Ct. 1989, 141 L. Ed 2d 277 (1998), and  have actual

notice of it. In Krebs v. New Kensington-Arnold Sch. Dist., 2016 U.S. Dist. LEXIS 159059, 2016

WL 6820402, at *10-11 (W.D,. Pa. Nov. 17, 2016) that Court held that meetings, conferences and

consults with District personnel was sufficient to demonstrate actual notice.  Importantly, the

District's legal representative was on notice of his health risks. Esperant satisfies this notice

standard.  In any case, it necessarily a fact-intensive inquiry, *see* Doe v. Sch. Bd. of Broward Cty.,

604 F.3d 1248, 1256 (1...1th Cir. 2010) as  officials roles vary among schools.  Plaintiffs satisfy

this element. As noted above and here again, Esperant satisfies the element that the District was

deliberately indifferent to his known needs.  This claim is likewise plausible

D.      THE 504 AND ADA FAILURE TO ACCOMMODATE CLAIM IS PLAUSIBLE

48.     Section 504 was enacted "to ensure that handicapped individuals are not denied benefits because

of prejudiced attitudes or ignorance of others" in federally funded programs. Brennan v. Stewart,

834 F.2d 1248, 1259 (5th Cir.1988). The ADA is a federal anti-discrimination statute designed

"[t]o provide a clear and comprehensive national mandate for the elimination of discrimination

against individuals with disabilities." Delano-Pyle at 574 *citing* Rizzo v. Children's World

Learning Ctrs., Inc., 173 F.3d 254, 261 (5th Cir. 1999).  As the  language  in the ADA tracks the

language set forth in the Rehab Act for this type of a claim, thus the "[j]urisprudence interpreting

either section is applicable to both." Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000).

49.     Accordingly, Esperant can meet the elements of a *failure to accommodate claim* (1) if he has a

qualifying disability; (2) the disability and limitations were known to the District and (3) the

District failed and refused to make reasonable accommodations for such known limitations. "If

the plaintiff proves those three elements, 'the defendants are liable for denying the accommodations.'" *See* Pickett v. Texas Tech Univ. Health Sciences Ctr., 2022 U.S. App. LEXIS 16564 at *30-31 (5th Cir., June 15, 2022) [finding failure to accommodate claim where university failed to provide student lecture and materials and to modify deadlines]; *see also* Neely v. PSEG Texas, Ltd. Partnership, 735 F3d 242, 247 (5th Cir. 2013).

50.    Again, and closely related to the claims above, Esperant again easily meets the elements, especially at this stage of the litigation. First and foremost, his disabilities and need for related accommodations were open and obvious, Smith v. Harris Cnty., 956 F.3d 311, 317- 318 (5th Cir. 2020), meaning there was no need for the family to ask for any specific accommodations. Of course, and in any case the medical noted provided by the father satisfies that element anyway.

51.    Here the District did not provide Esperant reasonable accommodations, an alternative to physical education class or a modified curriculum so he could participate.  He should have been permitted to walk rather than run.  He should have been given frequent water breaks. *See also* Bennett-Nelson v. La. Bd. of Regents, 431 F.3d 448, 455 (5th Cir. 2005); Estate of Esquivel v. Brownsville Indep. Sch. District, 2018 U.S. Dist. LEXIS 231738 * 16-17 (S.D. TX.- Brownsville Div., September 11, 2018) [denying motion for summary judgment when plaintiffs provided material facts that a reasonable jury could infer the Defendant failed to provide 'reasonable accommodations' ordered by a physician].

52.    Moreover the assessment of whether a particular accommodation is reasonable or not requires a fact-specific individualized analysis, PGA Tour, Inc. v. Martin, 532 U.S. 661, 688, 121 S. Ct.

1879, 149  L. Ed. 2d 904 (2001) and is best left to a *motion for summary judgment*. Chisolm v. McManimon, 275 F.3d 315, 327 (3d Cir.2001); Randolph v. Rodgers, 170 F.3d 850, 859 (8th Cir.1999) [finding that whether a sign language interpreter was required under the Rehab Act is a question of fact inappropriate for summary judgment]; Duffy v. Riveland, 98 F.3d 447, 454-56 (9th Cir.1996)[concluding that whether qualified sign language interpreter was required under the ADA is a question of fact inappropriate for summary judgment].  As such, and taken all the above into consideration both the ADA and Rehab Act *failure to accommodate* claims are plausible at this juncture of the litigation. Doe v. Tex. A&M Univ. at p. 383 [denying motion to dismiss on failure to accommodate claim]; Acosta v. Amarillo Indep. School District, 2025 U.S. Dist. LEXIS 80866 (N.D. TX- Amarillo Div., April 29, 2025) [finding failure to accommodate claim for failing to assure student carried their own epinephrine, did not to train staff for emergency conditions, did not to have trained nurse on campus and refused to administer emergency medications were discriminatory exclusions resulting in the student's death]; The Estate of T.J. v. Aldine Independent School District, C.A. 4:20-cv-4413, p. 8-10 (S.D. TX- Houston Div., March 12, 2021) (Judge Bennet, Presiding) [finding failure to accommodate claim where School District knew student had a heart murmur, needed frequent breaks, told his coaches he was not feeling well and needed water which was refused].  This claim is absolutely plausible.

## CONCLUSION AND PRAYER

53.    Plaintiffs have provided facts, and reasonable inferences that flow from such facts, that demonstrate plausible claims related to the Rehabilitation Act, the Americans With Disabilities Act, and the United States Constitution.

**PRAYER**

Plaintiffs further pray for judgment against the School District Defendant in the manner and particulars noted above, and in an amount sufficient to fully compensate Esperant and his parents both in the representative and in their individual capacities, for the elements of injuries enumerated herein, pursuant to the United States Constitution, Section 504 of the Rehabilitation Act of 1973 and the Americans With Disabilities Act, reimbursement for reasonable attorneys fees and costs and for such other and further relief as the Court may deem just and proper in law, equity, or both.

Respectfully submitted,
/S/ Andrew G. Counts
Mr. Andrew G. Counts, Esdq,
Texas Bar No. 24036408
Andrew@OHareLawFirm.com
**The Law Offices of Tim O'Hare**
1038 S. Elm Street
Carrollton, Texas 75006
(972) 960-0000 – Phone
(972) 960-1330 – Fax

Martin J. Cirkiel, Esq.
marty@cirkielaw.com [Email]
Texas Bar No.: 00783829
Fed. ID No.: 21488
Cirkiel Law Group, P.C.
1005 West 41st, Suite 201

Austin, Texas 78756
(512) 244-6658 [Telephone]
(512) 244-6014 [Facsimile]
REPRESENTATIVES FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on this the 31st day of July 2025 I electronically filed the foregoing documents with the Clerk of Court using the CM/ECF system. The following individuals shall be served in this matter via the CM/ECF system:

Ms. Andea W. Paris, Attorney
State Bar No. 24085652
aparis@belaw.com [Email]
Ms. Sarah S. Flournoy, Attorney
State Bar No. 24036575
sflournoy@belaw.com [Email]
Mr. Kale K. Ridge, Attorney
State Bar No. 24144099
kridge@belaw.com [Email]
BRACKETT & ELLIS, P.C.
100 Main Street
Fort Worth, Texas 76102-3090
Telephone: (817) 338-1700
Facsimile:  (817) 870-2265
**ATTORNEYS FOR DEFENDANT**